United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MUTHANA K. A. KORAISH,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 26-cv-04346-TLT

**ORDER TRANSFERRING ACTION TO THE EASTERN DISTRICT OF LOUISIANA**

Re: Dkt. No. 12

Plaintiff Muthana Koraish ("Plaintiff"), a resident of Oakland, California, filed this seafarer's action under the Jones Act for personal injuries on May 11, 2026 at 4:45 p.m. Pacific Daylight Time ("PDT"). ECF 1. Plaintiff brings this suit against the United States of America ("Defendant") pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 30901, *et seq*. (SIAA), the Public Vessels Act, 48 U.S.C. §§ 31101, *et seq*. (PVA) and the Jones Act, 46 U.S.C. §§ 30104, *et seq*. A third key player in this action is the United States Naval Ship ("USNS") WATSON, also known as m/v GEORGE WATSON. The WATSON is a public vessel of the United States, owned by the United States by and through the United States Navy, Military Sealift Command, and operated on its behalf by its agent Patriot Contract Services, LLC headquartered in Concord, California.

Plaintiff was a member of the crew of USNS WATSON. ECF 10, First Amended Complaint ("FAC") ¶ 42. He alleges that he was wrongfully accused of sexual harassment in front of his crew. *Id.* ¶ 42. Subsequently, he alleges, he was wrongfully terminated and as a result he suffered "sever injury, including bodily injury." *Id.* ¶ 42.

Having considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court **TRANSFERS** this action to the Eastern District of Louisiana.

United States District Court
Northern District of California

## I. LEGAL STANDARD

A party may bring a motion to dismiss an action for improper venue pursuant to Rule 12(b)(3). When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Public Vessels Act, 46 U.S.C. §§ 31101, et seq. contains a strict venue provision, which provides: "In general. A civil action under this chapter shall be brought in the district court of the United States for the district in which the vessel or cargo is found within the United States." If the vessel is outside the territorial waters of the United States at the time of filing, "the action shall be brought in the district court of the United States for any district in which any plaintiff resides. . . ." 46 U.S.C. § 31104. A public vessel is "found" in the district in which it is physically located when the complaint is filed. *Gimutao v. United States*, 2020 WL 7625119, at *1 (S.D. Cal. 2020) (citing *Sherman v. United States*, 246 F. Supp. 547, 548 (W.D. Mich. 1965)). Plaintiff bears the burden of showing venue is proper. *See De Ciel v. Porter*, No. 3:25-cv-03351, 2025 WL 2483160, at *3 (N.D. Cal. Aug. 28, 2025) (citing *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979).

## II. DISCUSSION

Defendant argues that the day Plaintiff filed his Complaint, the WATSON was docked in Marrero, Louisiana rendering venue improper in the Northern District of California. ECF 12 at 3. Plaintiff argues that the WATSON came into the territorial waters of the United States *after* the Complaint was filed, and that this action may properly be heard before this Court. ECF 14 at 2.

On a motion to dismiss pursuant to Rule 12(b)(3), "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Halcyon Syndicate Ltd., LLC v. Graham Beck Enters. (PTY), Ltd.*, No. 19-CV-04278-JCS, 2020 WL 4051865, at *18 (N.D. Cal. July 20, 2020) (citing *Murphy v. Schneider National, Inc.,* 362 F.3d 1133, 1137 (9th Cir. 2004); *see also Mendoza v. Fenix Ammunition LLC*, No. 2:24-CV-1120-ODW (MRWX), 2024 WL 3464411, at *9 (C.D. Cal. July 18, 2024) ("All well pleaded allegations in the complaint are accepted as true unless contradicted by the defendant's evidence. A court may examine facts outside the complaint to determine whether venue is proper."). Still, the court ''is obligated to

United States District Court
Northern District of California

draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *See Murphy*, 362 F.3d at 1138.

Plaintiff's complaint was filed on May 11, 2026, at 4:45 p.m. PDT. ECF 1. The Declaration of Stuart Belt in support of Defendant's motion states that the WATSON was docked in Marrero, Louisiana on May 11, 2026, but does not specify a time. ECF 12-4. Defendant subsequently provided an AT-SEA SITREP, or situation report, which places the WATSON arrival in Marrero, LA at 5:12 a.m. PDT on May 11, 2026.[1] *See* ECF 15-2, AT-SEA SITREP, Exhibit A to Declaration of Eric Kaufman-Cohen. The last entry on the situation report is Finished with Engines which occurred at 4:30 p.m. PDT on May 11, 2026. *Id.* In response to the Court's questions, Defendant provided the vessel's logs which appear to place the WATSON portside in Marrero, Louisiana at 12:45 p.m. PDT. Plaintiff's own exhibit shows that the WATSON arrived in New Orleans, Louisiana at 3:19 p.m. PDT.[2]

Again, the party asserting jurisdiction bears the burden of establishing that venue is proper. *De Ciel*, 2025 WL 2483160, at *3. Plaintiff raises a few objections for the Court to consider. First, Plaintiff points out some inconsistencies between time logged on the AT-SEA SITREP and the vessel's log. These purported inconsistencies alone do not satisfy Plaintiff's burden; perhaps, the WATSON arrived in Marrero in the morning and was not reported as docked portside until the afternoon due to marine traffic in the Mississippi River or perhaps there was a delay in reporting between the personnel responsible for the vessel's log. Irrespective, both documents reflect that the location of the WATSON before Plaintiff's complaint was filed was likely Marrero, Louisiana. Second, Plaintiff argues that the time reported on the vessel's log is local time, not ZULU time, meaning the WATSON arrived in Marrero, Louisiana at 5:45 p.m. PDT. Interpreting the factual record in the light most favorable to Plaintiff, the WATSON docked in Marrero, Louisiana one hour after Plaintiff filed his complaint. However, as Plaintiff notes, the WATSON is "a giant roll-

[1] For purposes of this Order, the Court has converted all relevant time stamps to Pacific Daylight Time. Thus, while most of the time representations are presented in Coordinated Universal Time, or ZULU time, this Order presents the Pacific Daylight Time equivalent.
[2] The Court notes that Plaintiff acknowledges that the time stamp reflected on his own exhibit is incorrect. The location of the WATON's on May 11, 2026 also appears to be incongruent with other sources submitted to the Court which place the vessel in Marrero, not New Orleans.

on/roll-off cargo carrier was built in 1998, and not built for speed." ECF 14 at 3. Thus, to safely dock by 5:45 p.m. PDT, the WATSON was likely within three nautical miles of Marrero, Louisiana at or before 4:45 p.m.[3] Where, *at best*, Plaintiff's evidentiary showing places the WATSON at or very close to Marrero, Louisiana at the time the Complaint was filed Plaintiff has failed to meet his burden of demonstrating that venue is proper in the Northern District of California under the Public Vessels Act.

Accordingly, the Court finds that venue is not proper in this district.

## III. CONCLUSION

The Court finds that the Northern District of California is not the proper venue to resolve this dispute. As the United States does not object to this Court to transferring the case to the Eastern District of Louisiana, pursuant to 28 U.S.C. §1406(a) the Court finds it proper to do so. ECF 15 at 2.

The Clerk is ordered to transfer the action forthwith to the Eastern District of Louisiana.

The initial case management scheduled for 8/20/2026 at 2:00 PM is hereby vacated.

This order resolves ECF 12.

IT IS SO ORDERED.

Dated: August 4, 2026

TRINA L. THOMPSON
United States District Judge

[3] As Plaintiff noted in his own papers "three miles or three 'marine leagues' historically have defined the territorial waters of the United States . . . When 46 U.S.C., § 31104 was repromulgated in 2006, Congress intended the statute to be understood as it had been for decades as referring to a three-mile reach from shore." ECF 14 at 2. Whether the boundary for United States territorial waters is 3 nautical miles or 12 nautical miles from the coast of the United States, Plaintiff has not satisfied his burden of demonstrating that the WATSON was beyond the territorial waters of the United States.